COURT OF APPEALS OF VIRGINIA


Present: Judge Bray, Senior Judges Duff and Overton
Argued at Alexandria, Virginia


ROBERT RUSSELL NEWTON,
 KATHLEEN HONEY NEWTON,
 ROBERT RUSSELL NEWTON, JR.,
 AND MISTY NICOLE NEWTON

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1672-98-4          JUDGE CHARLES H. DUFF
                                         APRIL 27, 1999
FAIRFAX COUNTY POLICE DEPARTMENT/
 FAIRFAX COUNTY BOARD OF SUPERVISORS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Michael A. Kernbach (Jack T. Burgess &
        Associates, P.C., on brief), for appellants.

        Ann Gouldin Killalea, Assistant County
        Attorney, (David P. Bobzien, County Attorney;
        Robert Lyndon Howell, Deputy County Attorney,
        on brief), for appellee.


    Robert Russell Newton ("deceased employee"), Kathleen Honey

Newton (widow), Robert Russell Newton, Jr. (son), and Misty Nicole

Newton (daughter) (hereinafter referred to as "the statutory

beneficiaries") appeal a decision of the Workers' Compensation

Commission ("commission") denying their claim for benefits.  The

statutory beneficiaries contend that the commission erred in

finding that this Court's holding in Arlington County Fire Dept.

v. Stebbins, 21 Va. App. 570, 466 S.E.2d 124 (1996), precluded an

---

        [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

award of indemnity benefits to them pursuant to Code § 65.2-512, where the deceased employee had voluntarily retired and earned no wages during the fifty-two weeks immediately preceding his death or within the fifty-two weeks immediately preceding the communication of the diagnosis of the occupational disease resulting in his death.  Because we find that <u>Stebbins</u> is dispositive of this case, we affirm the commission's decision.

The facts are undisputed.  The deceased employee worked for Fairfax County Police Department ("employer") for twenty-one years before retiring on December 11, 1993.  On June 9, 1996, the deceased employee suffered a fatal heart attack.  On July 23, 1996, the statutory beneficiaries filed a claim for benefits alleging an occupational heart disease.  Employer stipulated that the claim was compensable under the presumption provided in Code § 65.2-402 and accepted responsibility for medical and funeral expenses.  However, employer denied responsibility for weekly indemnity benefits.

On March 31, 1998, the parties stipulated to these additional facts:

> 1.  The deceased [employee] received a communication of an occupational disease, heart disease, on or about May 23, 1996.
>
> 2.  The deceased [employee] was not seeking employment within the 52 weeks preceding the date of communication of the diagnosis of the occupational disease or the date of death.
>
> 3.  The deceased [employee] received no earnings from employment during the 52 weeks

preceding the date of communication of the diagnosis of the occupational disease or the date of death. The deceased [employee] had voluntarily retired on December 11, 1993 and was receiving a monthly retirement benefit in the amount of $2,459.44. Upon his death, the monthly retirement benefit decreased to $1,329.17, payable to his wife, and $531.66 to each minor child.

In denying the statutory beneficiaries' claim for indemnity benefits, the commission found as follows:

The purpose of weekly compensation benefits for temporary total or temporary partial disability is wage replacement. The weekly benefits to an injured worker directly relate to his earnings. Similarly, the purpose of the weekly compensation death benefits, based on the decedent's average weekly wage, is to replace the wages lost to the dependents as a result of the death. Accordingly, the weekly benefits directly relate to the decedent's earnings, just as the benefits to an injured employee directly relate to his earnings. In the case of death benefits, the statutory dependents' eligibility for the benefits pursuant to Code § 65.2-512 are based on the relationship between the decedent and the dependents. These benefits are not abrogated by the fact that the decedent may not have had a wage loss. Only the amount of the benefits are affected by the apparent lack of wage loss. Thus, the dependents may receive the burial and transportation expenses provided by the statute. However, pursuant to the reasoning in Stebbins, no indemnity benefits should be awarded if the decedent had no income for the 52 weeks preceding the communication of the diagnosis.

Code § 65.2-512(A) provides that "[i]f death results from [an] accident within nine years, the employer shall pay, or cause to be paid, compensation in weekly payments equal to 66 2/3 percent of the employee's average weekly wages . . . ."

Code § 65.2-101 defines "average weekly wage" to mean "[t]he earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, divided by fifty-two . . . ."  In occupational disease cases, the date of the first communication of the diagnosis of the occupational disease or death resulting from the occupational disease is treated as the happening of an injury by accident. See Code § 65.2-403.

In Stebbins, this Court held that a firefighter disabled from heart disease was not entitled to compensation for lost wages where he earned no wages during the fifty-two weeks preceding his total incapacity.  See Stebbins, 21 Va. App. at 573, 466 S.E.2d at 126.  In Stebbins, we recognized that

> [t]he result from this strict reading of the statute comports with the rationale found in prior Virginia cases.  "The reason for calculating the average weekly wage is to approximate the economic loss suffered by an employee or his beneficiaries when there is a loss of earning capacity because of a work-related injury or death."  Compensation is ultimately dependent upon and determined on the loss of wages.

Id. (citations omitted).

The commission's decision is fully supported by our holding in Stebbins.  Based on the facts of this case, the deceased employee, similar to Stebbins, "suffered no loss of wages nor any economic loss."  Id. at 574, 466 S.E.2d at 126.  Thus, "[a]n

award of compensation in these circumstances would result in a windfall to [the statutory beneficiaries] . . . ."  Id.

Here, the deceased employee voluntarily retired in 1993. He was not employed at the time of his death.  He had not earned wages during the fifty-two weeks immediately preceding the communication of the diagnosis of his occupational disease or during the fifty-two weeks immediately preceding his death.  In addition, he was not actively seeking employment at the time of his death.  We find no basis upon which to distinguish this case from Stebbins.  Whether the employee became totally disabled due to an occupational disease after voluntary retirement, as in Stebbins, or whether the employee died due to an occupational disease after voluntary retirement, as in this case, does not alter the outcome.  Under either scenario, the determination of the amount of any indemnity benefits due the employee or his or her statutory beneficiaries would be based upon the employee's average weekly wage for the fifty-two weeks preceding the communication of the diagnosis of his occupational disease or his death as a result of that disease.  In this case, the parties stipulated that the deceased employee had no such wages and he was not actively seeking employment at the time of his death.  Therefore, he had no average weekly wage upon which to base an award of indemnity benefits.

Based upon the facts of this case and our holding in Stebbins,[1] we cannot find that the commission erred in denying the statutory beneficiaries' claim for indemnity benefits.

Accordingly, we affirm the commission's decision.[2]

<u>Affirmed.</u>

---

[1]We note that the General Assembly has not amended the Workers' Compensation Act so as to negate the Stebbins decision.

[2]Appellants have filed a "Motion for En Banc Review." We deny that motion.